**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

|  |  |
|---|---|
| HAWK TECHNOLOGY SYSTEMS, LLC, ) | |
| ) | |
| Plaintiff, ) | **REDACTED VERSION** |
| ) | |
| v. ) | Civil Action No. 3:20cv276-MPM-RP |
| ) | |
| KIRKLAND'S, INC. d/b/a KIRKLAND'S ) | Judge Michael P. Mills |
| STORES, INC., ) | |
| ) | Magistrate Judge Roy Percy |
| Defendant. ) | |
| ) | |
| ) | |

## <u>MEMORANDUM BRIEF IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION AND BACKGROUND ................................................................1

      A.     Summary of the Argument.................................................................................1

      B.     ███████████████████████████████ ........................................1

      C.     Each and Every Claim of the '091 Patent Is Invalid Under 35 U.S.C. § 101....................................................................................................................3

II.     LEGAL STANDARDS ...............................................................................................6

III.    ARGUMENT................................................................................................................7

      A.     █████████████████████████████████ ..........................7

      B.     The '091 Patent Claims Are Ineligible Under 35 U.S.C. § 101, Further Warranting Dismissal with Prejudice ...........................................................9

           1.     The '091 Patent Claims Fail *Alice* Step One Because The Claims Are Directed To An Abstract Concept .............................................9

           2.     The '091 Patent Claims Fail Alice Step Two ...........................................15

      C.     Request for Costs and Attorneys' Fees...........................................................19

IV.    CONCLUSION...........................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Affinity Labs of Tex., LLC v. Amazon.com,*
    838 F.3d 1266 (Fed. Cir. 2016)...........................................................................14

*Affinity Labs of Tex., LLC v. DirecTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016)......................................................................14, 16

*Alice Corp. Pty. Ltd. v. CLS Bank International,*
    573 U.S. 208, 134 S. Ct. 2347 (2014)..........................................................*passim*

*Apple, Inc. v. Ameranth, Inc.,*
    842 F.3d 1229 (Fed. Cir. 2016)...........................................................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009).......................................................................................7

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.),*
    687 F.3d 1266 (Fed. Cir. 2012)...........................................................................17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 556 (2007).......................................................................................7

*Bilski v. Kappos,*
    561 U.S. 593 (2010).............................................................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343, 1345 (Fed. Cir. 2014), cert. denied, 136 S. Ct. 119 (2015) .......6, 11

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011)...........................................................................13

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.,*
    758 F.3d 1344 (Fed. Cir. 2014)......................................................................13, 14

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016)................................................................10, 11, 19

*Gate Guard Servs., L.P. v. Perez,*
    792 F.3d 554 (5th Cir. 2015) ...............................................................................19

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015)...........................................................................11

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017)..................................................................*passim*

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
   No. 13-1632, 2017 WL 3706495 (D. Del. Aug. 23, 2017).....................................13

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)...................................................................5

*Mayo Collaborative v. Prometheus Labs*,
   132 S. Ct. 1289 (2012)...................................................................4, 15, 16

*Move, Inc. v. Real Estate Alliance Ltd.*,
   721 F. App'x 950 (Fed. Cir. 2018) ..............................................................15

*Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Ford Motor
   Co.*, 327 F. App'x 890 (Fed. Cir. 2009).................................................3, 6, 7, 9

*Network Apparel Grp., LP v. Airwave Networks Inc.*,
   No. 6:15-CV-00134, 2016 WL 4718428, at *2 (W.D. Tex. Mar. 30, 2016),
   *AFF'D*, 680 F. App'x 1003 (Fed. Cir. 2017) ....................................................6

*Oip Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359, 1362 (Fed. Cir. 2015)............................................................6

*Parus Holdings, Inc. v. Sallie Mae Bank*,
   137 F. Supp. 3d 660 (D. Del. 2015), *aff'd* 677 F. App'x 682 (Fed. Cir. 2017) ...........13

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) ........................................................16, 17

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)..................................................................13

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..................................................................15

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)...........................................................13, 14, 16

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
   563 F.3d 1271 (Fed. Cir. 2009)..............................................................7, 9, 19

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)..................................................................14

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014)...........................................................10, 12, 17

*Univ. of Fla. Research Found., Inc. v. GE Co.,*
    916 F.3d 1363 (Fed. Cir. 2019)............................................................................15

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC,*
    635 F. App'x 914 (Fed. Cir. 2015), *cert. denied,* — U.S. —, 136 S. Ct. 2390
    (2016)..........................................................................................................14

*WhitServe LLC v. Donuts Inc.,*
    809 F. App'x 929 (Fed. Cir. 2020) ..............................................................15, 18

**Federal Statutes**

28 U.S.C. § 1927..............................................................................................19

35 U.S.C. § 101 ..................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................ *passim*

## I.     INTRODUCTION AND BACKGROUND

### A.     Summary of the Argument

Defendant Kirkland's, Inc. d/b/a Kirkland's Stores, Inc. ("Kirkland's") and Movant-in-Intervention Salient Systems Corporation ("Salient") move to dismiss with prejudice the Complaint filed by Plaintiff Hawk Technology Systems LLC ("Hawk") for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). ████████████████████████ ████████████████████████████████████████████ ████████████████████████ █ ████████████████████████ ████████████████████████████████████████████ ████████████████████████████. Moreover, as discussed below, dismissal with prejudice is further warranted because each and every claim of the '091 patent is invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter.

### B.     ████████████████████████████████

Hawk brought this case against Kirkland's for alleged infringement of the '091 patent. (Doc. No. 1.)  Hawk's infringement allegations against Kirkland's are based solely upon Kirkland's use of Salient's video surveillance security technology.  Specifically, in Hawk's Complaint, Hawk accuses Kirkland's of infringing the '091 patent by using Salient's TouchView Mobile and CompleteView 20/20 VMS technology, which Salient sells to Kirkland's. (Doc. No. 1-2 at pp. 1-35.)







Dismissal with prejudice of this suit accordingly is warranted. *See, e.g., Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Ford Motor Co.*, 327 F. App'x 890, 891 (Fed. Cir. 2009) (affirming Rule 12(b)(6) dismissal where plain language of license agreement released defendant from any claims of patent infringement).

### C.  Each and Every Claim of the '091 Patent Is Invalid Under 35 U.S.C. § 101

Moreover, the claims of the '091 patent do not pass muster under either step of the Supreme Court's two-step test for patent eligibility under 35 U.S.C. § 101, as set forth in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208, 134 S. Ct. 2347 (2014).  The '091 patent contains

six claims: claims 1 and 6 are independent claims, and claims 2-5 depend from claim 1. All six claims purport to computerize nothing more than what video cameras have done for decades—video monitoring—and simply set forth abstract ideas using generic computer components and functionality.

Indeed, the claims of the '091 patent merely present a straightforward description of conventional video surveillance systems, accompanied by a generic recitation of the conventional steps of receiving video images at a computer based system and digitizing, displaying, converting, and storing the images, followed by transmitting the images for remotely-displayed viewing upon request. As can be seen in independent claims 1 and 6, this functionality is achieved using a conventional "personal computer," an "analog-to-digital converter," a "storage device," a "communications link" and a "remote viewing device." ('091 patent, claims 1 and 6). Dependent claims 2-5 merely identify the timing of the remote viewing (claims 2 and 3), the use of the Internet for remote communication (claim 4) and the bandwidth of the broadband connection (claim 5) and thus add nothing inventive. Because all six claims of the '091 patent use generic computer components and functionality, they fail under both steps of the *Alice* test.

In applying *Alice's* two-step test for identifying ineligible patent claims, a court first determines whether the claims are directed to one of the patent-ineligible concepts—laws of nature, natural phenomena, or abstract ideas. *Alice*, 134 S. Ct. at 2355 (citing *Mayo Collaborative v. Prometheus Labs*, 132 S. Ct. 1289, 1296–97 (2012)). If the claims involve a patent-ineligible concept, a court next considers the elements of the claims, both individually and as an ordered combination, to determine whether those elements transform the concept into something that is a patent-eligible application. *Id.* (citing *Mayo*, 132 S. Ct. at 1297–98).

Examining the claims of the '091 patent at *Alice* step one reveals that their "character as a

whole" is directed to an abstract concept. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). The steps in independent claims 1 and 6 of the '091 patent, for example, involve "receiving" video images at a personal computer based system, "digitizing" the images using an analog-to-digital converter, "displaying" the digitized images on a personal computer based display device, "converting" the images into a video format, contemporaneously "storing" the converted images in a storage device, "providing" a communications link for external viewing, "receiving" a remote request for streams of the video images, "transmitting" the video images to a remote viewing device, and "displaying" the video images on the remote device. Dependent claims 2-5 depend from claim 1 and, as discussed below, do not add anything inventive. As these highly generalized steps demonstrate, the asserted claims are directed to the patent-ineligible abstract concepts of "collecting, displaying, and manipulating data." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017).

Further confirming their abstract nature, the claims do not purport to improve the functionality of computers but instead use generic computer components as tools to carry out an abstract process. ('091 patent, claims 1-6.) The specification of the '091 patent likewise is bereft of any disclosure purporting to improve the functionality of any computing device. (*Id.* at col. 1-8.) The absence of meaningful technical detail in the claims or the specification describing how to achieve the claimed conversion of data from analog images into digital images or to achieve the claimed conversion of video images to a data storage format reaffirms that the claims are drawn from abstract ideas alone.

As for *Alice* step two, the elements of the claims of the '091 patent, viewed individually and as an ordered combination, provide no inventive concept. On the contrary, independent claims 1 and 6 generic steps and well-known components and/or features, such as a conventional

"personal computer," an "analog-to-digital converter," a "viewing device" and a "storage device." Dependent claims 2-5 fail to add anything inventive as these claims simply recite conventional functions and/or features known in the art. For example, claims 2 and 3 merely recite the timing of remote viewing of a video stream as contemporaneous with (claim 2) or subsequent to (claim 3) live viewing and storage. Claims 4 and 5 simply add that the remote computing device and the network environment communicate through the Internet (claim 4) and that the broadband connection has a bandwidth of 2-6 Megabits per second (claim 5). Merely adding generic computer functions and features such as these is not enough to save these claims from abstraction. *See, e.g., Alice*, 134 S. Ct. at 2351.

The claims of the '091 patent do not disclose any unique arrangement of these conventional components and features, or any details regarding their operation. Instead, these components simply perform their basic functions and provide a generic computing environment in which the abstract concept is carried out. The claims of the '091 patent accordingly fail both steps of the *Alice* test, and thus the claims are invalid under 35 U.S.C. § 101. Dismissal with prejudice of this suit is therefore warranted for this additional reason.

## II.    LEGAL STANDARDS

Questions of law such as the effect of a license and/or covenant not to sue, and patent eligibility under 35 U.S.C. § 101, are suitable for threshold resolution on a motion to dismiss. *NISTAC v. Ford*, 327 F. App'x 890, 891 (Fed. Cir. 2009) (affirming Rule 12(b)(6) dismissal where plain language of license agreement released defendant from any claims of patent infringement); *Oip Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345 (Fed. Cir. 2014), cert. denied, 136 S. Ct. 119 (2015) (affirming finding of ineligibility made on 12(b)(6) motion); *Network Apparel Grp., LP v. Airwave Networks Inc.*, No. 6:15-CV-00134, 2016 WL 4718428, at

*2 (W.D. Tex. Mar. 30, 2016), aff'd, 680 F. App'x 1003 (Fed. Cir. 2017) (granting 12(b)(6) motion to dismiss on grounds that the patent at issue is invalid under 35 U.S.C. § 101); *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1276-77 (Fed. Cir. 2009). In ruling on a motion to dismiss, the court "must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions...." *Id.* at 667 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## III.  ARGUMENT

### A.



. *See TransCore*, 563 F.3d at 1276-77 (covenant not to sue in settlement agreement unambiguously authorized sales of allegedly infringing product, and therefore warranted dismissal of infringement claims); *NISTAC*, 327 F. App'x at 891 (affirming Rule 12(b)(6) dismissal of patent infringement claims because agreement released defendant from any and all claims arising from patents at issue). For this reason alone, the Court should dismiss this suit with prejudice. *See id.*





The Federal Circuit has unequivocally held in controlling precedent that a customer cannot be liable as a matter of law for infringing a patent when the customer's supplier has entered into a prior settlement agreement that provides a covenant not to sue. *See TransCore*, 563 F.3d at 1276-77.[2]

. *See NISTAC*, 327 F. App'x at 891.

**B.     The '091 Patent Claims Are Ineligible Under 35 U.S.C. § 101, Further Warranting Dismissal with Prejudice**

**1.     The '091 Patent Claims Fail *Alice* Step One Because The Claims Are Directed To An Abstract Concept**

Moreover, the claims of the '091 patent do not satisfy either step of the Supreme Court's two-step test for patent eligibility under 35 U.S.C. § 101, as set forth in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208, 134 S. Ct. 2347 (2014), and for this additional reason the Court should dismiss Hawk's suit with prejudice. Step one of the *Alice* two-step test requires an examination of claims to determine whether their "focus" or "character as a whole" is directed to

---

[2] The Federal Circuit in *TransCore* also reiterated the longstanding legal principle that a "covenant not to sue" is equivalent to a "license." 563 F.3d at 1276.

excluded subject matter. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *Alice*, 134 S. Ct. at 2355-56. The goal of this step is to identify the basic concept at the "heart" of the claims. *See Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 714–15 (Fed. Cir. 2014) (abstract idea of the "heart" of eleven-step claim was using advertising as an exchange or currency).

Here, examining claims 1 and 6 of the '091 patent confirms that they merely present a straightforward description of conventional video surveillance systems, accompanied by a generic recitation of the conventional steps of "receiving" video images at a personal computer based system, "digitizing" the images using an analog-to-digital converter, "displaying" the digitized images on a personal computer based display device, "converting" the images into a video format, contemporaneously "storing" the converted images in a storage device, "providing" a communications link for external viewing, "receiving" a remote request for streams of the video images, "transmitting" the video images to a remote viewing device, and "displaying" the video images on the remote device. ('091 patent at claims 1, 6.) Stripped of excess verbiage, the '091 patent claims therefore fall into the "familiar class of claims" that the Federal Circuit has repeatedly held as directed to the patent-ineligible abstract concepts of collecting information, analyzing it, displaying certain results, and storing them. *Elec. Power Grp.*, 830 F.3d at 1353.

The Federal Circuit's opinion in *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332 (Fed. Cir. 2017), is particularly applicable here in that it involved an abstract concept very similar to that claimed in the '091 patent and is illustrative of the Federal Circuit's pervasive line of authority. There, the representative claim was to an "apparatus for manipulating XML documents." *Id.* at 1339. The claim elements included (1) a processor, (2) a component that organizes data components of one or more XML documents into data objects, (3) a component

-10-

that identifies a plurality of primary record types for the XML documents, (4) a component that maps the data components of each data object to one of the plurality of primary record types, (5) a component that organizes the instances of the plurality of primary record types into a hierarchy to form a management record type, (6) a component that defines a dynamic document for display of an instances of a management record type through a user interface, and (7) a component that detects modification of the data in the dynamic document via the user interface, and in response thereto modifies a data component in an XML document. *Id.*

Despite the prolixity of the claim language, the Federal Circuit in *Intellectual Ventures I* held that the claims were directed to the abstract idea of "collecting, displaying, and manipulating data." 850 F.3d at 1340. The Court analogized the claims to other ineligible claims reciting similar data manipulation steps, such as those in *Content Extraction*, 776 F.3d at 1347, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1347 (Fed. Cir. 2015), and *Electric Power Group*, 830 F.3d at 1353–54. *Id.* For instance, the Court noted that the analogous patent claims in *Content Extraction* involved "extracting data from a document, entering the data into appropriate data fields, and storing data in memory," and thus were directed to the abstract concept of "'1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory.'" *Id.* (quoting *Content Extraction*, 776 F.3d at 1347). The Court also highlighted similarities to the ineligible subject matter in *Capital One Bank*, which involved "customizing information and presenting it to users based on particular characteristics." *Id.* (citing *Capital One Bank*, 792 F.3d at 1370). And the Court pointed to the comparably abstract claims in *Electric Power Group*, which were directed to "collection, manipulation, and display of data." *Id.* (citing *Elec. Power Grp.*, 830 F.3d at 1353–54.

-11-

The additional content of dependent claims 2-5 of the '091 patent, which depend from claim 1, merely adds one or more conventional functions and/or features known in the art and therefore does not save the claims from abstraction but rather simply confirms that the claims are focused on patent ineligible concepts. Indeed, the additional recitations regarding the timing of remote viewing of a video stream as contemporaneous with (claim 2) or subsequent to (claim 3) live viewing and storage provide nothing inventive. Similarly, reciting that the remote computing device and the network environment communicate through the Internet (claim 4) and that the broadband connection has a bandwidth of 2-6 Megabits per second (claim 5) is, again, insufficient to save the claims from abstraction. *See, e.g., Alice*, 134 S. Ct. at 2351; *see also Ultramercial*, 772 F.3d at 716 ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101.").

Again particularly relevant here, the Federal Circuit in *Intellectual Ventures I* rejected the patentee's argument that the claimed subject matter was not abstract because it "relates to a specialized computer language – XML – and renders otherwise incompatible documents compatible through a unique dynamic document" based on data structures recited by the claims. 850 F.3d at 1341. In other words, just like the claims of the '091 patent, which involve digitization of analog images using an analog-to-digital converter, the patent in *Intellectual Ventures I* involved the manipulation of data to render otherwise incompatible information compatible. This was not enough to save the claims from abstraction because "the underlying concept embodied by the limitations merely encompasses the abstract idea itself of organizing, displaying, and manipulating data of particular documents." *Id.*

Thus, as in *Intellectual Ventures I* and the litany of analogous Federal Circuit decisions it cites, the claims of the '091 patent are directed to an abstract concept: collecting, manipulating,

displaying, and storing information. *See also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (holding claims to classifying and storing digital images in an organized manner to be abstract); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (finding that "a process of organizing information through mathematical correlations" is an abstract idea); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) (finding claimed process to "manipulate[ ] data to organize it in a logical way" was not sufficiently transformative to state a patent eligible invention); *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 13-1632, 2017 WL 3706495, *9-10 (D. Del. Aug. 23, 2017) (patent directed to "converting a multimedia message into a common format – an email message – for sending to another party and then converting the received common format back into [a] multimedia message" covered an abstract idea because it addressed the problem of "incompatibility in communication," which "has existed ever since human languages diverged"); *Parus Holdings, Inc. v. Sallie Mae Bank*, 137 F. Supp. 3d 660, 673 (D. Del. 2015), *aff'd* 677 F. App'x 682 (Fed. Cir. 2017) (patent that plaintiff characterized as "unifying different types of electronic voice and data communication systems" held to be directed to abstract idea of "organizing human (business) activity."); *see also RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("This method reflects standard encoding and decoding, an abstract concept long utilized to transmit information.").

Furthermore, to the extent that the claims of the '091 patent purport to describe an advance, which in reality they do not, the '091 patent claims do not set forth any particular inventive technology for performing any of the functions specified in the claims. Claims 1 and 6 the '091 patent generally describe using "temporal and spatial parameters." Neither claim 1 nor claim 6, however, explains or limits how any computer would be programmed or provides any other

-13-

meaningful technical detail for accomplishing displaying or converting functions using "temporal and spatial parameters." *Intellectual Ventures I*, 850 F.3d at 1340; *Digitech Image Techs.*, 758 F.3d at 1350.

The specification of the '091 patent likewise does not provide any details (*e.g.*, any algorithm), and it instead simply provides generic descriptions. ('091 patent at col. 1-8.) Indeed, in the '091 patent, there is no mention of any "temporal and spatial parameters" in the specification. (*Id.*) In fact, the '091 patent does not even mention the words "temporal," "spatial" or "parameters" anywhere in the specification. (*Id.*) In short, "[t]he specification fails to provide any technical details for the tangible components, [and] instead predominantly describes the system and methods in purely functional terms," a telltale sign that the '091 patent claims are abstract. *TLI Commc'ns,* 823 F.3d at 612.

At bottom, the claims of the '091 patent recite the same type of subject matter that routinely has been held to reflect an abstract idea and therefore fail under *Alice* step one. *See, e.g.*, *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) ("There is nothing in claim 1 that is directed to *how* to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself.") (emphasis in original); *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 918 (Fed. Cir. 2015), *cert. denied*, — U.S. —, 136 S. Ct. 2390 (2016) (patent lacked "any details about how the 'expert system' works…."); *Affinity Labs of Tex., LLC v. Amazon.com*, 838 F.3d 1266, 1269–70 (Fed. Cir. 2016) ("The purely functional nature of the claim confirms that it is directed to an abstract idea…."); *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329 (Fed. Cir. 2017) (held that the claims were directed to the abstract idea of sending information, directing the sent information, monitoring receipt of the sent information, and accumulating records about receipt of the sent

information); *Move, Inc. v. Real Estate Alliance Ltd.*, 721 F. App'x 950, 954 (Fed. Cir. 2018) (non-precedential) (finding under *Alice* step one that claim 1 is directed to the abstract idea of "a method for collecting and organizing information about available real estate properties and displaying this information on a digital map that can be manipulated by the user."); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (held ineligible claims relating to calculating, analyzing, and displaying investment data); *Univ. of Fla. Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (held that at *Alice* step one the representative claim 1 was directed to the abstract idea of "collecting, analyzing, manipulating, and displaying data."); *WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 931 (Fed. Cir. 2020) (affirming district court's decision holding patent claims ineligible under § 101 because the focus of the claims was simply to use computers and a familiar network as a tool to carry out economic practices involving simple information exchange, which is an abstract idea).

### 2. The '091 Patent Claims Fail Alice Step Two

In applying *Alice* step two, a court looks at the elements of each claim "both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1297–98). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' " *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1297). "[S]imply appending conventional steps, specified at a high level of generality, to … abstract ideas cannot make those … ideas patentable." *Mayo*, 132 S. Ct. at 1300. In addition, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010));

*see also DirecTV*, 838 F.3d at 1259 ("[M]erely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claim any less abstract.").

The conventional components of the '091 patent claims provide no inventive concept. A "personal computer," an "analog-to-digital converter," a "storage device," a "communications link" and a "remote viewing device" of the claims behave as expected, performing "well-understood, routine conventional activit[ies]" to implement the underlying abstract idea. *Mayo*, 132 S. Ct. at 1298. The '091 patent freely admits this, stating that the claims employ "conventional broadband channels" and "use [] a generic PC-based server [which] can easily handle a large monitoring application." ('091 patent at 2:15–20 and 5:44-45.) This generic computer implementation simply is not enough to transform a patent-ineligible abstract idea into a patent-eligible invention. *See, e.g.*, *Alice*, 134 S. Ct. (finding a "data processing system" to be purely functional and generic); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x at 1008–09 (Fed. Cir. 2014) (finding a "computer with a central processing unit," a "memory," an "input and output terminal," and a "printer" to be merely generic); *DirecTV*, 838 F.3d at 1263 (finding claims invalid that "simply recite[ ] that the abstract idea of remote delivery will be implemented using the conventional components and functions generic to cellular telephones.") Because the elements of the '091 patent claims "simply provide the environment in which the abstract idea…is carried out," they provide no inventive concept. *TLI Commc'ns*, 823 F.3d at 614.

Additionally, converting video source images into a data storage format provides no inventive concept either because "[it] merely describe[s] the functions of the abstract idea itself, without particularity." *Intellectual Ventures I*, 850 F.3d at 1341; *see also, Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016) (finding claimed software to be non-inventive, noting that "difficulty of the programming details for this functionality is immaterial because these details

are not recited in the actual claims."); *Planet Bingo*, 576 F. App'x at 1008–09 ("program…enabling" the steps of managing a game of bingo recited generic computer implementation of abstract idea). "This is simply not enough under step two" of *Alice*. *Intellectual Ventures I*, 850 F.3d at 1341; *see also Alice*, 134 S. Ct. at 2359 (holding claims to be patent ineligible where "each step does no more than require a generic computer to perform generic computer functions") (internal quotation marks, citation omitted); *Ultramercial*, 772 F.3d at 716 ("Adding routine[,] additional steps … does not transform an otherwise abstract idea into patent-eligible subject matter."); *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (appending generic computer components does not "salvage an otherwise patent-ineligible process"). Indeed, the underlying concept embodied by that claim element "merely encompasses the abstract idea itself" of receiving, manipulating, and displaying information. *Intellectual Ventures I*, 850 F.3d at 1341.

Examining dependent claims 2-5 of the '091 patent simply reinforces that there is no inventive concept here. That is, merely adding conventional functions and/or features known in the art does not render the claims non-abstract. For example, adding a step of viewing a given video contemporaneous with live viewing (claim 2) or subsequent to live viewing and storage (claim 3) fails *Alice* step two at least because "[it] merely describe[s] the functions of the abstract idea itself, without particularity." *Intellectual Ventures I*, 850 F.3d at 1341. Similarly, adding that the remote computing device and the network environment communicate through the Internet (claim 4) and that the broadband connection has a bandwidth of 2-6 Megabits per second (claim 5) is routine and well-understood in the art. *Ultramercial*, 772 F.3d at 716 ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101.").

-17-

Indeed, the law is clear that merely adding generic computer functions and features such as these is not enough to save the claims of the '091 patent from abstraction. *See, e.g., Alice*, 134 S. Ct. at 2351 (invalidating claims under § 101 where "the system claims recite a handful of generic computer components configured to implement the same idea" as method claims). When viewed individually or collectively, the underlying concept embodied by these claim elements "merely encompasses the abstract idea itself of organizing, displaying, and manipulating data." *Intellectual Ventures I*, 850 F.3d at 1341. None of these elements, viewed individually or collectively, "offers a meaningful limitation beyond generally linking the use of the [method] to a particular technological environment, that is, implementation via computers." *Alice*, 134 S. Ct. at 2360 (internal quotations and citations omitted).

Moreover, considering the '091 patent claim elements as an ordered combination does not alter the conclusion at *Alice* step two. Just as in *Intellectual Ventures I*, the claims of the '091 patent recite generic computer elements—a personal computer, an analog-to-digital converter, a storage device, a communications link and a remote viewing device—"and a series of generic computer 'components' that merely restate their individual functions." 850 F.3d at 1341; *see also WhitServe LLC,* 809 F. App'x at 934 (finding that "generic computer and communications components provide no eligibility-transformative inventive concept" and explaining that "the specific ordered combination of these generic components is likewise insufficient, as it does nothing more than spell out what it means to apply [the abstract idea] on a computer") (internal quotations and citations omitted). Thus, the claim elements "merely describe the functions of the abstract idea itself, without particularity," thereby providing no inventive concept. 850 F.3d at 1341. And while the '091 patent purports to have met a need in the art to implement an automated video monitoring system using a personal computer, an analog-to-digital converter, a storage

-18-

device, a communications link and a remote viewing device, "[n]othing in the claims indicate what steps are undertaken to overcome the stated incompatibility problems…." *Intellectual Ventures I*, 850 F.3d at 1342. As in *Intellectual Ventures I*, "the claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it." *Id.* "Our law demands more." *Id.* (citing *Elec. Power Grp.*, 830 F.3d at 1356 (cautioning against claims "so result focused, so functional, as to effectively cover any solution to an identified problem")).

Because the claims of the '091 patent fail to satisfy both steps of the Supreme Court's patent eligibility test in *Alice*, and thus are invalid under 35 U.S.C. § 101, the Court should dismiss Hawk's suit with prejudice for this additional reason.

### C.     Request for Costs and Attorneys' Fees

The Court possesses the inherent power to award costs and attorneys' fees against a party and its counsel. An award of attorneys' fees is proper where, for example, a party "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 555 (5th Cir. 2015); *see also* 28 U.S.C. § 1927. In this case, Hawk's lawsuit against Kirkland's is objectively baseless because no reasonable litigant could realistically expect success on the merits, especially when (1) the Federal Circuit has unequivocally held in controlling precedent that a customer cannot be liable as a matter of law for infringing a patent when the customer's supplier has entered into a prior settlement agreement that provides a covenant not to sue, *TransCore*, 563 F.3d at 1276-77, and (2) all claims of the '091 patent are invalid under 35 U.S.C. § 101 for failure to satisfy steps one and two of the Supreme Court's *Alice* test, 573 U.S. 208.

For at least the reasons discussed above, Hawk's suit against Kirkland's is baseless and

warrants an award of costs and fees against Hawk and its counsel.[3]

## IV.    CONCLUSION

For at least the reasons discussed above, the Court should dismiss Hawk's Complaint with

prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6), and award costs and fees against

Hawk and its counsel.

Dated: November 20, 2020                     Respectfully Submitted,


                                             /s/Joseph T. Getz
                                             Joseph T. Getz        Miss. BPR No. 4803
                                             Evans Petree PC
                                             1715 Aaron Brenner Drive, Suite 800
                                             Memphis, TN  38120
                                             (901) 525-6781
                                             jgetz@evanspetree.com


**Of Counsel:**

Justin J. Hasford
Finnegan, Henderson,
Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000
justin.hasford@finnegan.com

                                             *Attorneys for Kirkland's, Inc. d/b/a Kirkland's*
                                             *Stores, Inc. and Salient Systems Corporation*

---

[3] To the extent the Court prefers any request for costs and attorneys' fees against Hawk and its counsel to be filed as a separate motion, Kirkland's and Salient shall do so.

**CERTIFICATE OF SERVICE**

I, Joseph T. Getz, do hereby certify that I have electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of such filing to the following:

> Mr. Frank J. Dantone
> Henderson Dantone
> 241 Main Street (38701)
> P.O. Box 778
> Greenville, MS  38702
> Email:  fjd@hdpa.com
> <u>Attorney for Hawk Technology Systems, LLC</u>

on the 20th day of November, 2020.

/s/Joseph T. Getz
Joseph T. Getz